**In the Matter of the ESTATE OF Daniel I. PERLBERG, Deceased.**

**Richard P. JAHN, Sr., Co-Executor, Petitioner-Appellant,**

v.

**Ellis I. PERLBERG, Respondent-Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 31, 1984.

Permission to Appeal Denied by Supreme Court May 28, 1985.

Tanner, Jahn, Anderson, Bridges & Jahn, Chattanooga, for petitioner-appellant.

Ellis I. Perlberg, pro se.

## OPINION

SANDERS, Judge.

In this action to recover interim co-executor's fees, the Petitioner has appealed from the decision of the Hamilton County Chancery Court, which denied his claim for fees.

In September, 1966, the now-deceased Daniel I. Perlberg executed a will. In pertinent part, this will provided:

"V.

"I HEREBY NOMINATE, DIRECT and APPOINT my beloved wife, *Dora Kauffman Perlberg, Meyer Winer,* and *David Winer,* as Co-Executors of this will, and if either of them shall die, resign, be disqualified or become unwilling or unable to serve, then the remaining two (2) shall act as Co-Executors, and if one of them shall likewise die, resign, be disqualified, or become unwilling to serve, then the remaining one (1) shall act as such Executor, and likewise if the remaining Executor should die, resign, be disqualified, or become unwilling or unable to serve, then I name the *American National Bank and Trust Company of Chattanooga,* Tennessee, as such Executor. I hereby excuse the aforementioned Executors, or either of them, from making any bond."

"XII.

"The individual executors and trustees of this will shall receive no compensation in relation to a percentage of the trust funds or estate, nor shall they receive any compensation in accordance with law. The individual executors and trustees will, of course, be allowed compensation for their necessary expenses incurred on behalf of the estate such as accounting and necessary services of this nature rendered on behalf of the estate."

By codicil, executed in September, 1978, Mr. Perlberg altered his will, in part, as follows:

"Item 3

"I hereby strike the name 'Meyer Winer' each time it appears in *Items V* and *VI* of my said last will and substitute in lieu thereof the name of my friend 'Richard P. Jahn, Sr.' "

Mr. Perlberg died on September 14, 1980. Approximately two weeks later his will and accompanying codicil were admitted to probate upon the petition of Mr. Jahn.

As Dora Kauffman Perlberg had predeceased Daniel Perlberg, Mr. Jahn and David Winer were the remaining living executors and trustees specified under Mr. Perlberg's will. At the beginning Mr. Winer declined to serve because of a possible temporary conflict of interest. Thus, initially, on September 26, 1980, Letters Testamentary were issued only to Mr. Jahn. Subsequently, however, in February of 1981, Mr. Winer joined Mr. Jahn as a co-executor of the Perlberg estate.

In spite of the prohibition in the will against compensation for the individual executors and trustees, it appears the co-executors were regularly paying themselves and/or their respective firms as time was

being spent until Mr. Ellis Perlberg, one of the beneficiaries of the estate, informed them he did not want any further fees paid until they were approved by the court. At that time Mr. Jahn and/or his firm had received $16,194.88 and Mr. Winer and/or his firm had received $9,430.50.

In May, 1983, the two co-executors petitioned for an approval of interim co-executor fees for the period from September 14, 1980, through February 28, 1983. As evidenced by the petition and attached exhibits, Mr. Winer sought payment of $10,-372.14, representing total fees and expenses of $19,802.64, less the acknowledged previous receipt of $9,430.50, and Mr. Jahn sought payment of $28,049.82, representing total fees and expenses of $44,240.70, less the acknowledged receipt of $16,194.88.

Shortly thereafter, Mr. Ellis Perlberg (Respondent), a son of the deceased and a beneficiary under a trust established in his father's will, filed "Exceptions and Objections" to the claim of Mr. Jahn.

At a hearing before the chancellor on May 26, 1983, Ellis Perlberg made no objection to the Winer claim, and the court entered an order approving the claim. However, he set the Jahn claim for a later hearing.

It should be pointed out at this juncture that, even though Canon EC 7–27 of the Code of Professional Responsibility provides, in part, "A lawyer should not suppress evidence that he or his client has a legal obligation to reveal or produce," nothing was done prior to the second hearing to call the court's attention to the provision of the will prohibiting the payment of these fees.

On July 7, 1983, the chancellor heard Jahn's claim for fees and expenses. At the conclusion of the hearing, although noting that the fees claimed by Jahn were reasonable, the chancellor, based upon Item XII of the decedent's will (which was called to the court's attention by the Respondent), disallowed compensation for the time and services rendered by Mr. Jahn ($12,930). The chancellor, however, did allow the bal-

ance of Mr. Jahn's claim, representing the time and services rendered by the other members of his firm on the matter ($30,-020) as well as all of the firm's expenses ($1,294.70). These findings were adopted in the court's order of August 30, 1983.

Thereafter, Ellis Perlberg filed "Objections and Exceptions to Orders and Opinion of the Court" and a "Motion for New Trial," both of which the court overruled. Meanwhile, Petitioner Jahn filed certain motions with the court as well. In substance, the court reaffirmed its earlier judgment but, additionally, did note that Mr. Jahn has no duty, as executor, to attempt to recover funds paid by the estate to co-executor Winer pursuant to the court's May 26, 1983, order.

The Petitioner has appealed, alleging that the chancellor erred in holding that Item XII of decedent's will requires the co-executor to serve without compensation.

▆▆▆ In Tennessee and in virtually every other jurisdiction that has addressed the issue, where a will specifies that an executor is to receive a certain amount as compensation, or no compensation, for serving as an executor, he, by accepting the appointment, binds himself to the will's terms. See *Hoffman v. Jones,* 7 C.C.A. 392 (1917) (discussed in *Underwood v. United States,* 407 F.2d 608, 610 (6th Cir. 1969) (applying Tennessee law). *See also In re Will of Cornell,* 63 Misc.2d 234, 311 N.Y.S.2d 49 (1970) (one of a plethora of New York decisions in accord on this subject); *Hill v. Zanone,* 184 Ark. 594, 43 S.W.2d 238 (1931); *In re Hays' Estate,* 183 Pa. 296, 38 A. 622 (1897); *Seiple v. Mitchell,* 239 Ala. 533, 195 So. 865 (1940); *In re Bodger's Estate,* 130 Cal.App.2d 416, 279 P.2d 61 (1955). *But see Schloss v. Rives,* 162 Md. 346, 159 A. 745 (1932) (wherein the court stated that an executor would not be bound to compensation specified in the will but, instead, could recover the minimum amount allowed by statute). We, therefore, hold the Appellant's contentions, that estate representatives are entitled to be paid as a matter of law, even where the

will provides to the contrary, is without merit.

On the other hand, where the will is silent regarding compensation for an executor, our Supreme Court, in *Leach v. Cowan,* 125 Tenn. 182, 140 S.W. 1070 (1911), concluded that "the executors shall be credited with a reasonable compensation, and such has been the universal rule applied upon this subject in this State." *Id.* at 195, 140 S.W. 1070. We note that the *Leach* Court based its decision upon § 4037 of Shannon's Code (now Tenn.Code Ann. § 30–2–606, which provides, in pertinent part, that "[t]he clerk shall ... credit [the accounting party] with a reasonable compensation for his services...").

Keeping in mind the principles set out above, we must determine what the will has provided for relative to compensation for the co-executors.

We begin with one of the best-settled rules in Tennessee—that when construing a will, a court will attempt to ascertain the intention of the testator. *See, e.g., Locke v. Davis,* 526 S.W.2d 455 (Tenn.1975); *Martin v. Taylor,* 521 S.W.2d 581 (Tenn.1975); *Patterson v. Alexander,* 509 S.W.2d 834 (Tenn.1974); *First American National Bank v. DeWitt,* 511 S.W.2d 698 (Tenn. App.1972).

Further, "[t]he testator's intention is to be ascertained from the particular words used in the will itself, from the context in which those words are used, and from the general scope and purposes of the will, read in light of the surrounding and attending circumstances." *Fisher v. Malmo,* 650 S.W.2d 43, 46 (Tenn.App.1983) (citing to *Third National Bank v. First American National Bank,* 596 S.W.2d 824, 828 (Tenn. 1980); *Moore v. Neely,* 212 Tenn. 496, 502–03, 370 S.W.2d 537, 540 (1963).

█ Looking to Item XII of the will in question, sentence 1 provides "[t]he individual executors and trustees of this will shall receive no compensation in relation to a percentage of the trust funds or estate, nor shall they receive any compensation in accordance with law." Clearly, the first part of sentence 1 manifests the testator's intention that the executor(s) is not to be compensated upon a percentage basis. The second part of sentence 1 appears to indicate that the testator intended to prohibit the executor(s) from being compensated upon a legally prescribed basis. In this connection, the Appellee contends that the scope of "law," as used by the testator, encompasses not only statutory enactments but also common law/case law, as well. Under such a construction, and without any other provision in the will to the contrary, we would conclude the testator had blanketed totally any payment by his estate for executorial or trustees' services.

The Appellant, in the alternative, contends the testator intended for "law" to refer only to statutory acts, not case law as well. Under this assumption, the Appellant asserts that, based upon the *Leech* decision, *supra,* he is entitled to reasonable compensation for his services.

We cannot agree. First, we find no basis, either from the language in the will itself or from the surrounding circumstances, for arriving at such a restrictive construction of "law." We believe that, as a general proposition, the word "law" contemplates both statutory and case law.

Second, even were we to adopt the Appellant's narrow construction of the "law" to include only statutory acts, we nevertheless do not believe the Appellant could successfully rely upon the *Leech* decision to recover reasonable compensation for his services. It must be remembered that in *Leech,* where the decedent's will remained silent as to payment to the executor, the court expressly relied upon the present Tenn. Code Ann. § 30–2–606 (formerly Shannon's Code § 4037) to justify its award of reasonable compensation. As the testator, in the case at bar, admittedly prohibited statutorily-based compensation, the reasoning in *Leech* cannot be applied to the present situation.

Sentence 2 under Item XII does not alter our conclusion that the Appellant is not entitled to compensation for his services. Sentence 2 provides "[t]he individual execu-

tors and trustees will, of course, be allowed compensation for their necessary *expenses* incurred on behalf of the estate such as accounting and necessary services of this nature rendered on behalf of the estate." (Emphasis ours.) We interpret this provision solely to permit compensation to the executor(s) for *expenses* incurred for services such as accounting, appraisals, legal work, and the like, performed by others on behalf of the estate. This provision in no way alters our construction of sentence 1 by providing for compensation to the executor(s) and trustee(s) for their own services.

Reading Item XII in its entirety, we conclude the Appellant is not entitled to compensation for his services as a co-executor of the estate.

The Appellant next argues that if the trial court correctly ruled the co-executors under the will are to serve without compensation, then he erred in refusing to require co-executor Winer to return to the estate that part of the $13,910 sum paid to him for his personal services.

Also, although it appears that at the May 26 hearing the Respondent-Appellee did not oppose the fees paid to Mr. Winer, he did oppose them in the second hearing and insists on this appeal that they should be disallowed.

■ After the second hearing the court denied compensation to Jahn. However, in regard to his earlier action on the Winer claim, the court stated: "The fees heretofore requested by David Winer and members of Meyer Winer & Associates for services performed were approved by an Order entered May 25, 1983, and were paid and are now a Final Order, subject to notice to the Executor, David Winer, that he should be aware that his services as an Executor are also to be without compensation pursuant to Item XII of the Will."

Rule 54.02 of the Tennessee Rules of Civil Procedure provides as follows:

"When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties."

We find the trial court erred in concluding that its May 25, 1983, order was final. Under the express language of Rule 54.02, it was not a judgment "adjudicating all the claims and rights and liabilities of all the parties." Nor was there both "an express determination that there is no just reason for delay" and "an express direction for the entry of judgment."

■ Instead, the court's May 25 Order was interlocutory in nature, "subject to revision at any time before the entry of the judgment adjudicating all the claims of all the parties." Moreover, as the trial court ultimately construed Item XII of the will as denying compensation to the executors for their services, we believe the court erred in refusing to correct its May 25 Order which allowed compensation to Mr. Winer. For an application of Rule 54.02, *see Fox v. Fox*, 657 S.W.2d 747 (Tenn.1983).

We therefore remand this matter to the trial court for a determination of what portion of the fees paid to Mr. Winer and/or his firm were for services rendered by him as executor or should have been rendered by him as executor, and what portion was rendered by other members of his firm strictly as accounting services, and to render a decree accordingly.

In the court's Order of August 30, 1983, it allowed the charges for the services rendered by the attorneys, other than Jahn himself, in Jahn's law firm. In permitting such charges, the court stated that "there are charges detailed for services rendered by members of the law firm of Tanner & Jahn that, ... in the Court's opinion based on the experience of counsel and prevailing rates in this area, are certainly reasonable.

"There has been no showing today that the services that have been rendered by Pat Taintor, Harold North, Fielding Atchley, Jr., Darrell Bridges, and Richard Jahn, Jr. were unnecessary or that the services were improperly rendered by those individuals."

 From our review of the record, we find that this conclusion is not supported by the proof. It is the insistence of the Respondent-Appellee in his brief that an analysis of the Appellant's statement for services indicates that many of the services rendered by members of the firm were not strictly legal services but were administrative functions which were duties of the co-executors, and we agree with this insistence. Also, Mr. Taintor, an attorney in the Appellant's law firm, testified, without contradiction, at trial that he "did the leg work on ... Dan Perlberg's estate." At least to the extent that Mr. Taintor, and others, performed, and charged for, executorial services that were the obligation of Mr. Jahn, the attorneys' fees paid by the estate have been unreasonable.

"The attorney has the burden of proving the performance of the services contracted for ... their nature and extent, the value of such services, and the reasonableness of his charge." 7A C.J.S. *Attorney & Client* § 345 (1980)

"The burden of establishing the reasonable fee is upon the party claiming it, not upon the client." *Adams v. Mellen,* 618 S.W.2d 485, 490 (Tenn.App.1981). The only proof offered at the trial concerning the reasonableness of the legal fees was the expression of a member of the firm that he considered the fees to be reasonable.

The case is remanded to the trial court for further hearing as to what services rendered by the firm were strictly legal services as opposed to the duties of the co-executors, and the reasonableness of the charges for those services.

The cost of this appeal is taxed to the Appellant.

PARROTT, P.J., and GODDARD, J., concur.